Plaintiffs seek to enforce specific performance of the following instrument signed by defendant on September 4, 1945, to-wit:
"* * * I hereby promise to sell to Mr. and Mrs. Stanley Parham the place opposite the High School building. This comprises a lot measuring 110 feet wide by 200 feet deep, with the buildings thereon.
"Be it understood that this promise is given to Mr. and Mrs. Stanley Parham only and cannot be transferred to anybody else.
"The sale for this lot is to be passed between this and the 1st of Jan. 1946 — and the price agreed upon is $1,000.00 cash. *Page 302 
"If at any time before the sale is passed Mr. and Mrs. Parham should change their plans they are at liberty to withdraw from this agreement. * * *"
On the date this instrument was signed, Stanley Parham, one of the plaintiffs, was absent in the armed service of the Government and had nothing personally to do with the negotiations that terminated in the execution of said instrument. His wife acted for him and herself. However, it was not signed by her.
On or about November 2d Mrs. Parham delivered to defendant her personal check for $200 as a payment on the price of the property. Defendant made no effort to collect the check. She held it for nine days and having decided to recede from her promise tendered it back to Mrs. Parham and at that time advised her and her husband (who had returned from service) that she had withdrawn her offer to sell the property to them. The tender was refused and two days thereafter plaintiffs executed a notarial act wherein they declared that they accepted the offer or promise of sale and were ready, willing and able to pay all of the purchase price. This decision and the act sought to be enforced were then placed of record by them. They, through counsel, immediately demanded of defendant that she execute to them a deed to the property. She stood firmly on her determination not to go through with the sale. This suit followed. Plaintiffs deposited in the registry of the court $800 to be delivered to defendant on the court's order.
[1] Defendant in limine litis interposed exceptions of no cause and no right of action which were overruled. The exceptions are not urged here and we assume that they have been abandoned.
Defendant resisted the suit on several grounds, including these, to-wit:
That the instrument in question is a nudum pactum, contains no reciprocal obligation on plaintiffs' part, and is unilateral in character; that said instrument is null and void because of its potestative character in that it gives plaintiffs the right to withdraw therefrom but does not accord to defendant the same right; that it has not the effect aml force of an option since no consideration whatever was paid by plaintiffs for the right to accept or reject same within the time specified; that since the instrument was null and void ab initio, defendant had the right to recede therefrom at will and did so on November 11th, at which time plaintiffs were given notice of her action; and, lastly, that Mrs. Parham could not legally bind her husband in the agreement to purchase the property as a community of acquets and gains exists between them, and he, alone, as its head and master, is clothed with legal power to obligate said community as regards the purchase of real estate; that she was not authorized in writing by her husband as required by law, to accept the instrument on his or the community's behalf.
There was judgment for which plaintiffs prayed, and defendant appealed.
The case was tried on an agreed statement of facts.
Plaintiffs' counsel concedes that the instrument in question required their acceptance to render it enforceable, and contends that the giving of the check by Mrs. Parham and its acceptance by defendant without protest or objection, together with the notarial declaration on their part on November 13th and the registry thereof and of the instrument involved herein, amounted to an acceptance of the said instrument and as a result bound them as promisees.
[2] Beyond question the instrument sought to be enforced is nothing more than a unilateral offer or promise of sale which allowed plaintiffs until January 1, 1946, to accept it and pay the price, but they were expressly relieved from an obligation to acquire the property for said price and within the time fixed. The offer was, from its own terms, a continuing one. It was not enforceable in its original form because it was lacking in essential elements required by Article 2462 of the Civil Code.
[3] While it is true the instrument does not expressly accord to defendant the right to recede therefrom at any time prior to its acceptance by plaintiffs, in some form or manner recognized by law, nevertheless she had the right to do so. Such right flows from an elementary legal principle. Until there was an acceptance of the offer by *Page 303 
plaintiffs with the obligation on their part to pay the price of the contemplated sale, it cannot be said that there was a concurrence of wills as regards the subject matter of the instrument. This principle of law is clearly announced by and reflected from Articles 1800 and 1801 of the Civil Code, which read as follows:
"The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract.
"The party proposing shall be presumed to continue in the intention, which his proposal expressed, if, on receiving the unqualified assent of him to whom the proposition is made, he do not signify the change of his intention."
[4] As stated above, the sole act of plaintiffs that has any semblance of acceptance of the instrument prior to defendant's withdrawal therefrom, was the delivery to defendant of the check of $200 on November 11th. As defendant withdrew her promise or offer prior to execution of the notarial act of acceptance by plaintiffs, and notified them of her action, that instrument cannot have any influence upon the relative legal rights of the parties anent the question of enforcement of the instrument.
[5] There is more than one reason why the delivery of the check did not amount to and had not the effect of an unconditional acceptance by plaintiffs of the character necessary to convert the promise or offer of sale into a binding commutative contract. In the first place the price stipulated was $1,000 and it was to be paid all in cash, inferentially, at least, at one and the same time, not by installments. And, in the second place, the delivery of the check, even though it be conceded amounted to an acceptance by Mrs. Parham, it was not so as to Mr. Parham; and, third, when the check was delivered Mrs. Parham did not expressly or impliedly, for herself or for her husband, undertake to obligate herself or him to pay the remaining $800. She could have thereafter ignored the whole matter and not have incurred financial liability to defendant.
In support of their contention that the action of plaintiffs in the respects above mentioned amounted to an acceptance of the promise or offer to sell, they cite and rely upon the case of Cerami v. Haas, 1915 La. 1048, 197 So. 752. Cursory reading of this decision clearly differentiates it in facts from the case at bar. This case holds that an offer of sale may be accepted and rendered enforceable by acts of the promisee other than by positive and express written declarations.
[6, 7] There is another reason why the instrument in question may not be specifically enforced even though it be conceded arguendo that delivery of the check to defendant had the effect of an acceptance on the part of Mrs. Parham of the promise or offer of sale. Presumably, the community of acquets and gains exists between plaintiffs. The husband is head and master of the community and in him exclusively is vested the right and power to acquire ownership of real property for the community's account, and thereby commit it to liability for the purchase price. The promise or offer of sale was indivisible. It was in favor of both plaintiffs. If unenforceable as to one, it was likewise unenforceable as to both.
[8] The wife may act as agent for the husband in the acquisition of property that becomes a community asset, but in the case of real estate authority to do so must be in writing. Article 2997, Civil Code. See Lewis et al. v. King et al.,157 La. 718, 103 So. 19; Noble v. Plouf et al., 154 La. 429, 97 So. 599; Turner v. Snype, 162 La. 117, 110 So. 109; Hammonds v. Buzbee et al., 170 La. 573, 128 So. 520.
[9] In the statement of facts it is admitted that each of the plaintiffs would testify that Mrs. Parham "had authority to carry on the negotiations on behalf of her husband * * * and on her behalf", regarding the purchase of the property. The authority referred to evidently was conferred orally as no written evidence bearing thereon was introduced. However, if the mentioned testimony had been admitted in evidence it would not have had the effect of *Page 304 
dispensing with written evidence from Mr. Parham to his wife authorizing her as his agent or that of the community to purchase the property and bind him and it as vendee in the act of sale.
To support their contention that Mrs. Parham's authority from her husband was adequate for her to act as his agent and bind him in connection with the contemplated sale, plaintiffs rely upon Act No. 49 of 1944, which amends and re-enacts Article1787 of the Civil Code, and reads as follows: "A married woman may act as mandatary, and her acts will bind the mandator and the person with whom she contracts, although she be not authorized by her husband; she may also act as mandatary for her husband or for the community when authorized by her husband."
[10] We think this law was not intended to, nor does it dispense with written authority to the wife from the husband in transactions involving the acquisition of real property, title to which is intended to vest in him individually or in him as head and master of the community.
For the reasons herein given, the judgment appealed from is annulled and reversed, and the suit is dismissed at plaintiffs' cost.