522 So.2d 159 (1988)
Vincent CAMPAGNA, et al.
v.
TENNECO OIL COMPANY and St. Bernard Parish Police Jury.
No. CA-8406.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
Writ Denied June 2, 1988.
*160 Thomas L. Giraud, Slavador M. Cusimano, Charles A. Verderame, New Orleans, for plaintiffs.
Christovich and Kearney, E. Phelps Gay, New Orleans, for defendantSt. Bernard Parish Police Jury.
Deutsch, Kerrigan & Stiles, Charles K. Reasonover, New Orleans, for Tenneco Oil Co.
Before GULOTTA, C.J., and BYRNES and CIACCIO, JJ.
GULOTTA, Chief Judge.
Plaintiffs, the owners of a tract of land in St. Bernard Parish, appeal from a judgment dismissing their suit seeking dissolution of a lease and damages because their lessee granted to the parish police jury the right to dig a drainage canal and remove earth from the site without the owners' permission. Because we conclude that the lessee had the right to sublet the property for this purpose and that plaintiffs have suffered no damage thereby, we affirm.
On October 11, 1967, members of the Campagna family leased a tract of land in St. Bernard Parish to Tenneco Oil Company for a pipeline right-of-way. The initial term of the lease was for twenty-nine *161 years, and Tenneco was given the option to extend the lease for seven additional ten year terms.
On February 23, 1983, Tenneco granted the St. Bernard Parish Police Jury a right to dig a drainage canal across the leased property to prevent flooding in a nearby residential development. Their written agreement, which was signed without consulting the Campagna family, provided that no right or ownership was vested in the Parish "with the exception of this servitude" and that all "excavated material" was to be disposed of according to Tenneco's wishes. In May, 1983, pursuant to the agreement, the Parish dug a canal approximately 2,000 feet in length, 30 feet wide, and 4 to 6 feet deep across the Campagna property, essentially straightening and deepening an already existing drainage ditch on the land. Although most of the dirt removed in the course of digging was spread and graded on the property, the Parish hauled away some material to fill parks and neutral ground areas. Tenneco received no compensation or rental in connection with the digging of the canal.
After a trial on the merits, the trial judge dismissed plaintiffs' suit. In written reasons, the judge concluded that Tenneco had not exceeded its authority under its lease with the Campagnas by subletting the property to the Parish for the drainage canal. He found that only 15%-20% of the soil excavated in the digging had been removed from the property and that the Tenneco-Campagna lease had not been breached. He further concluded that no rights of ownership had been granted to the Parish, that the Tenneco-Parish lease was "nothing more than the right to dig and use the canal for drainage", and that the Tenneco-Campagna lease "should remain in full force and effect."
Appealing, plaintiffs contend that Tenneco violated its lease by giving the Parish the right of ownership of a servitude that was not limited to any term of years. According to plaintiffs, this perpetual servitude required them to file the instant suit to protect their rights against acquisitive prescription in favor of the Parish. Plaintiffs further argue that Tenneco alienated a portion of their immovable property by disposing of the soil without their consent, or, alternatively, usurped their "mineral" rights in the mud. We disagree.
We find no error in the trial judge's conclusion that Tenneco has not exceeded its authority under the Tenneco-Campagna lease. Paragraph III of the lease provides that Tenneco "shall have any and all rights upon the premises, above described, as though the Lessee held full title to the property in fee simple...." The rights given to Tenneco include "the right to dredge canals", to "sublet all or part of the premises", and to conduct "any and all other legal uses to which the premises may be utilized." The lease further provides that Tenneco, "... has the right to assign this lease in whole or in part and to sublet in whole or in part to third parties without the express consent of Lessor." In view of these broad rights granted the lessee, we conclude the oil company had the right to sublet a portion of the property to the Parish to construct the drainage canal.
Although plaintiffs characterize the agreement between Tenneco and the Parish as the grant of a "perpetual servitude", it is captioned as a "lease agreement". The testimony indicates that representatives of both Tenneco and the Parish understood that the Campagna family owned the property and that the agreement was not intended to convey ownership of the drainage canal to the Parish. Thus, a parish engineer who had stated in deposition that Tenneco "owned" the property, later explained at trial that he really meant that Tenneco could use the property under its lease with the Campagnas as if Tenneco owned the land. The parties simply interpreted the Tenneco-Campagna lease as authorizing Tenneco to sublet the property for the canal without the Campagna family's permission.
Although the Tenneco-Parish agreement "grants, transfers and conveys" the right to use the property for a drainage canal, and provides that no "right of ownership" is vested in the Parish "with the exception of this servitude", this language must be *162 read in light of the parties' intention. Indeed, after suit was filed, the Parish passed a resolution and subsequently recorded an "Act of Clarification of Lease, Correction and Ratification and Waiver of Any Claim of Prescription" in which both Tenneco and the Parish stated that the Parish had acquired only a leasehold interest in the property, had no intent to claim any type of ownership or rights by prescription against the property, and had waived any right or benefit of acquisitive perscription which may exist.
Moreover, in order to acquire property by acquisitive prescription under LSA-C.C. Art. 3424, one must intend to possess the property as owner. The Parish lacks this specific intent in this case. Furthermore, under LSA-C.C. Art. 730, any doubt as to the existence of a predial servitude must be resolved in favor of the servient state. As the Revision Comments to this codal article state, "... in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected", and an ambiguous instrument must be read in a way that "least restricts the ownership of the land". Thus, any questionable phrasing in the Tenneco-Parish agreement must be interpreted in favor of the ownership rights of the Campagnas.
The circumstances considered, we find no error in the trial court's conclusion that the Tenneco-Parish agreement grants the Parish only a sublease of the drainage canal for as long as Tenneco leases the property from the Campagnas. No perpetual servitude has been granted, and the Campagnas or their successors in title continue to retain full ownership of their property, including the canal.
We further reject plaintiffs' argument that Tenneco has breached the lease by permitting the Parish to remove dirt from the property. Although the testimony established that some of the dirt was carried away by the Parish, most of the material was graded on the site. Moreover, the contractor who performed the work testified that the material was of "poor quality". Furthermore, in exercising its right under the lease to dredge canals and use the property as if it were an owner in fee simple, Tenneco, by necessity, has an implicit right to dispose of earth removed in the course of the excavation. Under these circumstances, the trial judge properly concluded that removal of some of the soil did not constitute a breach of the Tenneco-Campagna lease.
In so holding we distinguish Landry v. LeBlanc, 416 So.2d 247 (La.App. 3rd Cir. 1982), writ denied 421 So.2d 247 (La.1982), relied on by plaintiffs. In Landry, a lessee under an oral farm lease removed topsoil without the lessor's permission. Citing LSA-C.C. Art. 462, which provides that tracts of lands and their component parts are immovables, our brothers on the Third Circuit held that the lessee's oral transfer of the topsoil was null and that the lessee had breached the lease by purporting to transfer ownership of the soil without the lessor's authorization.
Although we do not dispute that soil is an immovable within the meaning of LSA-C.C. Arts. 462-465 and do not quarrel with the result reached in the Landry case, our factual situation is far different from that in the cited decision. Pursuant to its broad authority under the terms of the Campagna-Tenneco lease, Tenneco granted to the police jury, by a signed and duly recorded document, the right to dig a drainage canal on the leased property and dispose of the excavated material according to Tenneco's wishes. Under these circumstances, plaintiffs cannot rely on LSA-C.C. Art. 462 and the Landry decision to contradict the express provisions of their lease authorizing Tenneco's actions.
We likewise reject plaintiffs' contention that Tenneco has disturbed their retained mineral rights by disposing of the mud. Paragraph III of the Tenneco-Campagna lease provides that the lessor-owners retain "mineral rights ... which may be mined or recovered by lessor through directional drilling only." Even assuming that soil can be considered as a "mineral" for general purposes, the definition of mineral rights in a particular instrument depends *163 upon the language used and the intention of the parties. Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228 (1942). By referring to minerals that can be extracted through "directional drilling", the parties apparently intended that the Campagna family would retain rights to minerals such as oil and gas, but not to topsoil or mud. Furthermore, the mineral rights clause of the lease must be read in connection with Tenneco's right to dig drainage canals on the property. When these two lease provisions are read together, it is clear that Tenneco has not interfered with the owners' mineral rights by disposing of some of the mud removed in the canal excavation.
Accordingly, the judgment is affirmed.
AFFIRMED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting.
I have grave doubts as to the majority's characterization of the agreement between Tenneco and the St. Bernard Parish Police Jury as a sub-lease rather than a servitude. Granting the right to dig a canal and use that canal for drainage seems more in the nature of a servitude than a sub-lease. The self-serving testimony of Tenneco and the Police Jury does not in my opinion, suffice to prove otherwise.
More importantly to appellants' claim that the lease was breached, the record shows beyond doubt that 15% to 20% of the soil excavated from the property in digging the canal was removed by the Parish. The majority finds this acceptable because Tenneco's lease allowed it to use the property as if it were the owner. This, the majority holds, gave Tenneco "the implicit right to dispose of earth removed in the course of excavation". I disagree.
By allowing the soil to be removed, Tenneco permanently depleted the leased property. To say that this is permitted because the lease states that Tenneco can use the property as if it were the owner is like saying that the lessee of a home under a similar lease could remove the mantels and doors and dispose of them without breaching the lease. I find this position illogical and unfair. Using the property is simply not the same as depleting it. Tenneco in essence alienated or gave away part of the leased property. In my opinion, this breached the lease.